IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DARRYL RASDALL,                      )
                                     )
                  Plaintiff,         )
                                     )   CIVIL ACTION
v.                                   )
                                     )   No. 06-2454-JWL-JTR
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
                  Defendant.         )
_____ )

REPORT AND RECOMMENDATION

Plaintiff seeks review of final decisions of the
Commissioner of Social Security (hereinafter Commissioner)
denying disability insurance benefits (DIB) and supplemental
security income (SSI) under sections 216(i), 223, 1602 and
1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i),
423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act).  The court
sought and has now received additional briefing regarding
jurisdictional issues raised by the parties initial briefs, and
the case is now ripe for decision.

I.   **Background**

Plaintiff made three applications for SSI and/or DIB which
are implicated in judicial review of the decisions at issue here.
Plaintiff first filed applications in January, 1998 alleging

disability beginning Mar. 17, 1997(first application). (R. 368).
Proceedings on those applications resulted in a hearing decision
on Dec. 14, 1999.  Id.  Eventually, the decision was appealed to
the District Court for the District of Kansas and ultimately
remanded "for the limited purpose of determining whether
plaintiff's ability to concentrate is limited because of pain."
(R. 418).  In its remand order, the Appeals Council directed the
Administrative Law Judge (ALJ) to "give consideration to the
treating source opinion [of Dr. Paula Davis] pursuant to the
provisions of [certain regulations and rulings], and explain the
weight given to such opinion evidence." (R. 425).

While the first application was pending judicial review,
plaintiff filed two more sets of applications.  On Mar. 27, 2001,
plaintiff filed applications for DIB and SSI(second application).
(R. 368).  In due course an ALJ hearing was held, and a decision
was issued on Jun. 13, 2003.  (R. 492-96).  In the decision on
the second application, the ALJ found plaintiff's date last
insured was Jun. 30, 1998 and that administrative res judicata
precluded a finding that plaintiff was disabled before Dec. 15,
1999, the day after the decision on the first application.  (R.
494).  But, he found plaintiff disabled within the meaning of the
Act beginning Mar. 27, 2001, the date of filing the second
application.  (R. 495).  The decision on the second application
was not appealed.

After the decision on the second application, SSI benefits were stopped because they "were found not payable on technical grounds." (R. 368). In its remand order pursuant to the court's remand of the first application, the Appeals Council stated it "found no basis to disturb that decision [on the second application] under the reopening provisions in 20 CFR 416.1488." (R. 425). Although he had been found disabled beginning Mar. 27, 2001 based upon the second application, plaintiff filed a third application (for SSI only) on Dec. 9, 2003 (third application). (R. 799-801). The third application was denied initially and upon reconsideration. (R. 781, 782). Plaintiff requested an ALJ hearing. (R. 794-96).

On remand, the ALJ held a consolidated hearing on the first and third applications. (R. 368). Based upon that hearing, on Apr. 20, 2006 the ALJ issued two decisions. (R. 365-76, 1038-50). One decision (the decision on remand, or the decision on the first application) denied benefits based on plaintiff's first application (R. 368-76), and the other (the decision on the third application) denied benefits based on the third application. (R. 1041-50).

On Apr. 24, 2006, plaintiff's counsel requested Appeals Council review of both of the ALJ's decisions. (R. 363, 1037); see also, (R. 364)(calling this a "bizarre decision" and stating "I have enclosed two separate requests for review because the ALJ

-3-

mysteriously issued two separate decisions for the same hearing"). Because the notice of hearing decision regarding the first application provided an incorrect procedure for seeking review of an ALJ's decision on remand, and apparently before receiving plaintiff's requests for review, on Apr. 25, 2006 the Commissioner sent a letter to plaintiff explaining the correct procedure to request review. (R. 360-62). On May 30, 2006, plaintiff's counsel responded to that letter, again requested Appeals Council review, set out in some detail plaintiff's objections to both of the ALJ's decisions (R. 356-59), and concluded that "The decisions of the ALJ should be reversed." (R. 359). Thereafter, the Appeals Council responded with a letter dated Sep. 26, 2006, refusing to assume jurisdiction of the case. (R. 349-52)[1](hereinafter "Appeals Council decision" or "decision of the Appeals Council").

In his Social Security Brief, plaintiff made assertions which raised questions regarding the court's jurisdiction and regarding what issues are properly before the court. These questions were enumerated in the court's Order regarding supplementation of the record and supplemental briefing. (Doc.

_____

[1]The "Court Transcript Index" lists this document: "Decision of the Appeals Council, dated 09-26-06." This name is found in the index on the third page of the administrative record and is the third of four unnumbered and otherwise unpaginated documents at the beginning of the record. Consecutive numbering of the record begins with the number "1" on the fifth page of the record.

22).  Plaintiff alleged that he filed the third application because he was informed by personnel in the Ottawa, Kansas SSA district office that although he had been found disabled for purposes of Supplemental Security Income, he could not appeal the excess resource determination, and he must file another application.  (Doc. 16, pp.2-3)(hereinafter Pl. Br.).  Plaintiff alleged that the third application and the remand of the first application "were consolidated and on April 20, 2006, ALJ Werner issued a decision denying both claims."  Id. at 3.

In his brief, the Commissioner alleged that the "final decision regarding Plaintiff's second and third sets of applications were subject to judicial review, and such review, if sought, could have resolved the matters as required by the Social Security Act."  (Doc. 21, pp.1-2)(hereinafter Comm'r Br.).  The Commissioner presented "Facts Relevant to the January 20, 1998 Applications [(the first application)];" id. 3-12; but discussed no facts relevant to the second or third applications.  The Commissioner asserted that the ALJ consolidated the first and third applications for hearing but issued two separate decisions on Apr. 20, 2006.  Id. 12-13.  From that point on, the Commissioner assumed the decision on remand is at issue here, and the decision on the third application is not at issue here.

The Commissioner asserted that the second and third applications constituting the time period after Mar. 27, 2001 are

-5-

not at issue here because the decisions on the second and third applications "were not appealed and are not currently before this Court." (Comm'r Br. 15). The Commissioner then discussed the issues for which the district court remanded the decision on the first application and argued that the decision on remand properly concluded plaintiff was not disabled before Mar. 2001, and that substantial evidence supports that determination. Id. 15-17.

The court ordered supplementation of the record and directed the parties to brief the issues regarding the court's jurisdiction over the proceedings on the second and third applications and over plaintiff's claim that he was not given adequate notice regarding the Commissioner's excess resource determination. The Commissioner sought remand pursuant to the fourth sentence of 42 U.S.C. § 405(g) to correct the ALJ's alleged de facto reopening of the second decision (among other reasons), filed a supplemental record as ordered by the court, and filed a brief discussing the issues raised by the court. (Docs. 23, 25, 26). Plaintiff has filed his brief in response to the court's order (Doc. 29); the case is now ripe for decision.

## II.  Jurisdiction

Because "[t]he court's first duty is to determine its jurisdiction to entertain and decide a case on its merits;" Thompson v. United States, 291 F.2d 67, 68 (10th Cir. 1961); the court must decide the jurisdictional issues first and determine

what issues are properly before it.  The court will begin with
consideration of whether the court has jurisdiction over the
decision on the third application.

The sole basis for jurisdiction in Social Security cases
arises under 42 U.S.C. § 405(g).  Brandtner v. Dep't of Health
and Human Servs., 150 F.3d 1306, (10th Cir. 1998) (citing Reed v.
Heckler, 756 F.2d 779, 782 (10th Cir. 1985).  As explained in
Reed, 42 U.S.C. § 405(h) bars federal question jurisdiction in
suits challenging denial of claimed Social Security benefits.
Reed, 756 F.2d at 782 (citing Weinberger v. Salfi, 422 U.S. 749
(1975)).  The Administrative Procedures Act does not provide an
implied grant of subject-matter jurisdiction for review of the
actions of the Social Security Administration.  Califano v.
Sanders, 430 U.S. 99, 107 (1977).  Therefore, 42 U.S.C. § 405(g)
provides the only basis for judicial review of such actions.
Mathews v. Eldridge, 424 U.S. 319, 327 (1976).

The Court in Sanders held that 42 U.S.C. § 405(g) limits
federal judicial review to final decisions of the Secretary made
after a hearing; id. 430 U.S. at 108; and that a decision by the
Secretary not to reopen a case is not a "final decision of the
Secretary made after hearing," and is, therefore, not reviewable
by federal courts.  Id.  Where the Commissioner's decision is
itself challenged on constitutional grounds, however, the court
may have jurisdiction to review the allegedly unconstitutional

-7-

decision.  Id., at 109; see also, Eldridge, 424 U.S. at 326-32.
Moreover, where the Commissioner does not dispose of a case on
the basis of res judicata, but has, in fact, reopened the case by
reviewing that case on the merits and considering additional
evidence, the court has jurisdiction to review the case.  Brown
v. Sullivan, 912 F.2d 1194, 1196 (10th Cir. 1990) (citing Taylor
ex rel. Peck v. Heckler, 738 F.2d 1112, 1114-15 (10th Cir.
1984)).

**A.   Jurisdiction Over the Decision on the Third Application**

The Commissioner argues that the court is without
jurisdiction over the decision on the third application because
plaintiff has not met his burden to show facts establishing
jurisdiction.  (Doc. 26, pp.5-7)(hereinafter, Comm'r Supp.).  In
his Motion for Remand the Commissioner stated that on remand he
would "act upon Plaintiff's request for review of the unfavorable
ALJ decision on his third application" (Doc. 23, p.3)(hereinafter
Remand Mot.), thereby suggesting that the Commissioner has not
yet determined whether to grant, deny, or dismiss the request for
review of that decision, and that the present action is premature
with regard to that decision.  Plaintiff argues that the court
has jurisdiction over the decision on the third application
because plaintiff exhausted his administrative remedies and has
timely filed his complaint seeking "judicial review of the
consolidated case of the first remanded decision and the decision

-8-

on the third application." (Doc. 29, p.4) (hereinafter Pl.
Supp.).  The court agrees with plaintiff.

As the Commissioner argues, plaintiff did not specifically
identify in his complaint which decision he was seeking to have
reviewed, and did not object to the fact that the administrative
record did not include both decisions issued on Apr. 20, 2006.
However, plaintiff asserted that he had exhausted administrative
remedies and that jurisdiction was proper pursuant to 42 U.S.C.
§ 405(g).  Moreover, in his initial brief plaintiff alleged that
the proceedings on remand and the proceedings on the third
application had been consolidated.  (Pl. Br. 3).

The record evidence and the posture of this case supports
plaintiff's assertion that the decision on remand and the
decision on the third application were consolidated.  After
remand, the ALJ held a single hearing regarding both
applications.  (R. 368, 994-1036).  The decision on the third
application and the decision on remand were issued by the ALJ on
the same day, Apr. 20, 2006.  (R. 365-76, 1038-50).  Plaintiff
filed requests for review of both decisions.  (R. 363, 1037); see
also, (R. 364)(calling this a "bizarre decision," and stating "I
have enclosed two separate requests for review because the ALJ
mysteriously issued two separate decisions for the same
hearing").  Yet, the Appeals Council issued but one decision in
which it addressed both requests for review.  (R. 349-52).

In the normal course of events, the Appeals Council may only act to deny, dismiss, or grant a request for review.   20 C.F.R. §§ 404.967, 416.1467; see also, (Doc. 25, Attach. 2) "Declaration of Dennis V. Ford," p.2 (hereinafter Ford Declaration).   It is only in a case remanded from a Federal court that the Council has the prerogative to assume or to decline jurisdiction of a hearing decision.   Id. at §§ 404.984, 416.1484.   Because the Council here refused to "assume jurisdiction," one might assume (as the Commissioner apparently has) that the "Decision of the Appeals Council" (R. 349-52) relates only to the decision on remand and does not relate to the decision on the third application.

However, the court ordered the Commissioner "to produce the administrative record regarding the decision on the third application" (Doc. 22, p.11), and the Commissioner supplemented the record with evidence relating to the third application. (Doc. 25); see also Ford Declaration, p.3 (file now contains all documents pertinent to the court's order).   Therefore, the court finds it has before it the administrative record regarding the third application.   Yet, the court finds no document in the record purporting to be the separate decision of the Appeals Council regarding appeal of the decision on the third application.   It finds no document purporting to be the "Action of the Appeals Council on Request for Review" regarding the request for review of the decision on the third application.   The

-10-

record may be read to signify, as the Commissioner's Motion to
Remand suggests, that the Appeals Council has not yet made a
determination regarding review.  But, there is nothing in the
supplemental record or in the Ford Declaration which would
indicate that the record is not complete or that Appeals Council
action on the third application is pending.  Moreover, in its
decision, the Appeals Council did not mention that a
determination regarding review of the decision on the third
application was still pending.

     To the contrary, in its decision the Appeals Council found
the third application "duplicate" to the first application, and
specifically incorporated the rationale of the hearing decision
on the third application into the hearing decision on remand by
reference.  (R. 350).  The Appeals Council justified the ALJ's
determination regarding pain-related deficits in concentration
(the issue for which this court remanded the original decision on
the first application) by reference to "page 6 of the hearing
decision and pp. 6-7 of the related April 20, 2006 hearing
decision [on the third application]." Id.  The Commissioner did
not define a "duplicate" DIB or SSI application, and the court's
research finds no definition of "duplicate," "duplicate
application," or "duplicate claim" within the regulations
governing disability under Title II or Title XVI of the Act--20
C.F.R. Pts. 404 & 416.  Nonetheless, the clear sense of the

-11-

Appeals Council's decision is that the third, "duplicate," application is completely subsumed within the application of which it is a duplicate--the first application.  (R. 349-50).

The court's research found certain Social Security disability cases where the agency has denied claims it has labeled "duplicate" on the basis of res judicata, while asserting a refusal to reopen the earlier claim of which the claim at issue was the duplicate.  E.g., Taylor, 738 F.2d at 1114; Myers v. Gardner, 361 F.2d 343, 345 (9th Cir. 1966); Miller v. Barnhart, 33 Fed. Appx. 914 (9th Cir. 2002); Searcy v. Comm'r, 103 F. Supp. 2d 120, 122 (N.D.N.Y. 2000)(referring to an application denied as duplicate in 1987); Harris ex rel. Harris v. Bowen, No. IP86-599-C, 1989 WL 280374 at *1 (S.D. Ind. May 19, 1989); Husband ex rel. Alford v. Heckler, No. H81-0148(N), 1985 WL 71806 at *1 (S.D. Miss. Jan. 9, 1985).  Here, the Appeals Council cannot mean "duplicate" in the sense of the cases cited (that the third application is res judicata pursuant to the decision on the first application) because the decision on the second application was an intervening decision which found plaintiff disabled within the meaning of the Act after the period covered by the first application.  Therefore, the decision on the first application cannot alone be controlling as to disability in any period subsequent to the decision on the second application.  But, its rationale might properly be applied to the third application.

In these circumstances the court finds that the Appeals Council determined resolution of the issues presented in the third application were controlled by the rationale contained in the decision on remand, consolidated the two actions, incorporated the decision on the third application into the decision on remand, and declined to assume jurisdiction of the consolidated decisions.  The court finds the decision on remand and the decision on the third application were consolidated by the Appeals Council, and the court has jurisdiction over the consolidated case.  Defendant does not argue that plaintiff failed to exhaust administrative remedies regarding the consolidated case--except by suggestion that Appeals Council review of the decision on the third application is not yet completed.  Because the Appeals Council consolidated the decisions filed on Apr. 20, 2006, and incorporated the rationale of the decision on the third application into the decision on remand, the court will rely on the rationale of both decisions in deciding the issues presented here, and will consider the ALJ's consolidated decisions as the final decisions of the Commissioner for the separate time periods relevant to each application.

Because the Appeals Council declined to assume jurisdiction over the consolidated decisions, those decisions became the final decisions of the Commissioner on remand.  (R. 350); Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004); 20 C.F.R.

-13-

§§ 404.984, 416.1484.  The Commissioner does not argue that plaintiff failed to file a timely complaint with this court.

The court agrees with the Commissioner's understatement that this case has a complex procedural history which "appears to have produced inconsistent results." (Comm'r Br. 1).  However, any ambiguity regarding jurisdiction and administrative exhaustion can be laid directly at the feet of the Commissioner.  The ALJ held a consolidated hearing on both applications.  The ALJ filed two distinct decisions on the same day regarding disability for two distinct periods of time.  The Appeals Council received two requests for review of the two decision with but a single brief which asserted error in both decisions.  The Appeals Council did not seek to clarify the ambiguities presented.  The Appeals Council did not provide an "Action of the Appeals Council on Request for Review" as would be the usual response to a request for review of a hearing decision which did not involve court remand.  The Commissioner does not argue in this action that review of the decision on the third application is still pending.  The Appeals Council issued a decision finding the decision on the third application duplicative.  Finally, the Appeals Council incorporated the decision on the third application into the decision on remand.  The Commissioner was in the best position to preclude or to correct the confusion which resulted, and he did neither.

-14-

**B.** **Jurisdiction Over the Decision on the Second Application**

The Commissioner argues that the Appeals Council's actions did not reopen the decision on the second application, but that the ALJ's hearing decision worked a <u>de facto</u> reopening. (Comm'r Supp. 2); (Remand Mot. 2).  In his Motion to Remand, the Commissioner explained that on remand he would reinstate "the Jun. 3, 2003 finding of disability for the time period encompassed by that decision." (Remand Mot. 3).  Plaintiff agrees with the Commissioner that the Appeals Council did not reopen the second application. (Pl. Supp. 1).  Plaintiff argues that the Appeals Council erred in finding that the decision worked a <u>de facto</u> reopening of the decision on the second application.  (Pl. Supp. 1-2)[2].  The court agrees with both parties that the Appeals Council did not reopen the decision on the second application, and with plaintiff that the ALJ's hearing decisions did not work a <u>de facto</u> reopening of the decision on the second application.

As noted above, <u>de facto</u> reopening occurs when the Commissioner reviews the earlier decision on the merits and considers additional evidence with regard to disability in the

---

[2]Plaintiff's counsel apparently misunderstands the Commissioner's position, because he states his position as concurring with the <u>Commissioner's admission</u> "that the Appeals Council erred in finding that the ALJ's April 20, 2006 decision did work a de facto reopening of the decision of June 23, 2003." (Pl. Supp. 1-2).

time period at issue in the earlier decision. <u>Brown v. Sullivan</u>, 912 F.2d 1194, 1196 (10th Cir. 1990) (citing <u>Taylor</u>, 738 F.2d at 1114-15). With regard to the decision on the second application, reopening occurred if the ALJ or the Appeals Council considered additional evidence with regard to disability during the period covered by the decision on the second application (Mar. 27, 2001 through the time SSI payments ceased in Aug. 2003) and reviewed on the merits the decision whether plaintiff was disabled during that period. This determination is a close question.

It is clear the ALJ considered evidence relating to plaintiff's condition during the period covered by the decision on the second application. (R. 371)(citing Exs. 13F, B-4F relating to Jun. 15, 2001 and May 19, 2001); (R. 372)(citing Exs. B6F, 13F relating to May 19, 2001, Jun. 15, 2001, Dec. 23, 2002, and "through Dec. 2002"); (R. 373-74)(discussing Dr. Davis's opinion dated Apr. 28, 2003); (R. 1044)(citing Exs. 1F, 2F relating to Jun. 15, 2001, Dec. 23, 2002, Apr. 1, 2003, Apr. 28, 2003, and May 12, 2003); and (R. 1046-47)(discussing Dr. Davis's opinion dated Apr. 28, 2003 and citing Ex. 7F relating to examinations on Mar. 5, 2002, and Dec. 9, 2002). On the other hand, the ALJ did not make it clear in the decision on remand that he was not reviewing the question of disability during the period covered by the second application.

In the decision on remand, the ALJ found that plaintiff has not been disabled within the meaning of the Act "from March 17, 1997 <u>through</u> the date of this decision." (R. 376)(emphasis added). This finding, especially when viewed in conjunction with the discussion of evidence relevant to the time period covered by the decision on the second application, implies that the ALJ actually considered the question of disability during the time period covered by the decision on the second application and worked a <u>de facto</u> reopening of that decision. However, the decision on the third application is far more clear regarding whether the ALJ considered disability during the time period covered by the decision on the second application. In that decision, the ALJ set out the background regarding the proceedings on the first application and the proceedings on the second application. (R. 1041). He noted that he had denied the first application in a decision on remand issued concurrently with the decision on the third application, and that plaintiff had been found disabled in the decision on the second application but was subsequently denied SSI payments. <u>Id.</u> He noted that the prior applications had been finally adjudicated, and he stated his conclusion regarding reopening the decisions:

> Therefore, these prior applications are considered <u>res judicata</u>, until the claimant's latest protective filing date of Dec. 9, 2003. No prior determination will be reopened.

(R. 1040).

The ALJ's discussion of the evidence relating to the period covered by the decision on the second application does not compel a finding that the ALJ reviewed the merits of the decision on the second application and that his consideration worked a _de facto_ reopening of that decision because the discussion of the evidence might be viewed as merely putting plaintiff's condition in context.  The decision on the third application makes it clear that the ALJ did not review the determination of disability during the period covered by the decision on the second application.  The rationale in the decision on the third application was incorporated into the decision on remand. Consequently, the court finds that the ALJ did not review the merits of whether plaintiff was disabled during the period covered by the decision on the second application, and did not work a _de facto_ reopening.  Therefore, the court finds that it is without jurisdiction to review the decision on the second application.

### C. Jurisdiction Over the Excess Resource Determination

In its Order requiring supplementation of the record and supplemental briefing, the court noted that plaintiff argued the only reason he filed the third application was because he was told by personnel in the Social Security Administration district office that he could not appeal the excess resource determination, but must file a new application.  (Doc. 22,

p.7)(citing Pl. Br. 2-3).  The Commissioner argues that although
the Social Security Administration did not retain a copy of the
Aug. 2003 notice of the agency's excess resource determination,
"the record contains a notation indicating that" notice was sent
to plaintiff.  (Comm'r Supp. 4)(citing (R. 457-58)).  The
Commissioner argues that plaintiff failed to exhaust
administrative remedies regarding the excess resource
determination and, therefore, the court is without jurisdiction
to consider that issue unless plaintiff has raised a colorable
constitutional claim.  (Comm'r Supp. 4)(citing <u>Sanders</u>, 430 U.S.
at 109; and <u>Koerpel v. Heckler</u>, 797 F.2d 858, 863 (10th Cir.
1986)).  The Commissioner argues that plaintiff has not claimed a
Constitutional violation and, even if he has, the record
establishes that plaintiff was represented by counsel, was aware
of the reasons for cessation of payments, and merely failed to
pursue the proper administrative procedures.  (Comm'r Supp. 4-5).

     In his supplemental brief, plaintiff cites his hearing
testimony that he was verbally notified of the excess resource
determination and told that if he moved into the house which
formed one basis for the excess resource determination he would
once again qualify for SSI payments.  (Pl. Supp. 2)(citing (R.
1016)).  He argues that he was not given written notice of the
excess resource determination or advised of his right to seek
reconsideration of the determination, but "was incorrectly

advised that his only remedy was to file a new claim." (Pl. Supp. 2-3). Plaintiff argues that he was deprived of due process of law by the Commissioner's failure to give notice of the excess resource determination and to give him an opportunity to contest that determination.

As the Commissioner argues, plaintiff did not show that he has exhausted administrative remedies regarding the excess resource determination, and the court is without jurisdiction unless plaintiff has raised a colorable constitutional claim. Here, plaintiff essentially alleges that he was denied due process of law when his SSI payments were stopped and he was not given notice of the basis for the determination or an opportunity to defend. This is a colorable constitutional claim. The Supreme Court held in a situation in which welfare payments were stopped that, "In the present context the[] principles [of due process] require that a recipient have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend." Goldberg v. Kelly, 397 U.S. 254, 267-268 (1970). The Court noted, "These rights are important in cases such as those before us, where recipients have challenged proposed terminations as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases." Id., 397 U.S. at 268.

-20-

Here, plaintiff alleges he was not given <u>adequate</u> notice of the cessation of payments, in that he was not advised specifically what the excess resources were.  (Pl. Supp. 3). Perhaps more importantly, he alleges he was not given an effective opportunity to defend.  He alleges he was told at first that if he moved into the house, payments would begin again (R. 1015-16), and later he was told he could not contest the agency's determination, but must file a new application.  (Pl. Supp. 2-3). These allegations, if true, constitute a denial of due process pursuant to <u>Goldberg</u>.  Plaintiff has presented a colorable constitutional claim justifying failure to exhaust administrative remedies.  Therefore, the court has jurisdiction to address the excess resource determination.

The Commissioner's argument that the record establishes plaintiff was represented by counsel and aware of the reasons for cessation of payments, but merely failed to pursue the proper administrative procedures, is not so clearly established by the record as the Commissioner asserts.  The record shows that plaintiff was represented by counsel in proceedings on the second application.  (R. 449-50, 492, 512-13).  The decision on the second application was issued on Jun. 13, 2003 (R. 488-96) and as the Commissioner argues, that decision was not appealed.  The record contains no indication that plaintiff had on-going representation thereafter regarding continued receipt of SSI

-21-

payments.  The record contains no evidence plaintiff was
represented when he filed the third application.  (R. 799-801).
Plaintiff requested particular actions with regard to the third
application on Mar. 17, May 25, and Jun. 29, 2004, and each
request was signed by plaintiff himself without representation or
allegation of representation.  (R. 787, 793, 795).  Although
proceedings on judicial review of the decision on the first
application were on-going throughout the time period at issue,
the record contains no indication that at that time counsel was
aware of the excess resource determination or of the third
application.  On Feb. 16, 2005, the Appeals Council remanded the
decision on the first application for further proceedings, and in
its remand order instructed the ALJ to "consider whether the
[third application] should be consolidated with the current
claim."  (R. 425).  Insofar as the administrative record reveals,
that was the first time plaintiff's counsel may be charged with
knowledge of the third application and the proceedings thereon.
It was at this point at which counsel might be presumed to have a
duty to inquire regarding the reason for the third application,
might be charged with knowledge of the cessation of SSI payments,
and might be chargeable with representation of plaintiff in that
matter.

The Commissioner's allegation that plaintiff was aware of
the reasons for cessation of SSI payments is equally unsupported

by the administrative record.  The Commissioner asserts,
"Apparently, the excess resource was a house Plaintiff owned, but
in which he did not reside" (Comm'r Supp. 3), and thereby tacitly
admits that the house may or may not not be the true and complete
reason for the excess resource determination.  Moreover, the only
clear evidence in the record that SSI payments ceased due to an
excess resource determination is in the "Declaration of Dennis V.
Ford" included in the Commissioner's supplemental record.  (Doc.
25, Attach. 2, p.3 of 4).  In his declaration, Mr. Ford asserts
that SSI "benefits were terminated beginning September 2001 due
to excess resources." Id.  Mr. Ford asserts that the basis of
his information is "the electronic computer control system
maintained by the Social Security Administration." Id.  The
record does not show that at the time payments ceased (or even at
the present time) plaintiff was aware of the Commissioner's
stated basis for termination of payments.

     The issue framed by plaintiff's constitutional claim is
evidentiary in nature.  The court states the issue:  Was notice
of the excess resource determination, in fact, given; if so, was
the notice adequate to apprise plaintiff of the basis for the
Commissioner's determination and actions thereon; and, was
plaintiff given an adequate opportunity to defend.  Although the
court has jurisdiction to address the constitutional question,
the underlying fact-finding upon which the court must make its

determination is within the province of the Commissioner.

Shrader v. Harris, 631 F.2d 297, 302 (4th Cir. 1980) (citing

Califano v. Sanders, 430 U.S. 99, 109 (1977).

The necessary inquiry is a factual inquiry, the answer to
which is not in the record.  Therefore this issue should be
remanded to the Commissioner in order to conduct an evidentiary
hearing and to make findings.  The court would caution the
Commissioner that a mere query of his database is insufficient to
address the question of whether plaintiff was afforded
constitutionally adequate notice and an opportunity to defend.

With regard to whether notice was given, the Tenth Circuit
has addressed the requirements of due process.

> When the name and address of an interested party is
> known, due process requires notice by mail or
> equivalent means designed to tender actual notice.  See
> Mennonite Bd. of Missions v. Adams, 462 U.S. 791,
> 798-800, 103 S. Ct. 2706, 77 L. Ed. 2d 180 (1983).
> This court has held, however, that "due process does
> not require that the interested party actually receive
> the notice." In re Blinder, Robinson & Co., 124 F.3d
> 1238, 1243 (10th Cir. 1997);  see also United States v.
> 51 Pieces of Real Prop., 17 F.3d 1306, 1316 (10th Cir.
> 1994).

Costello v. Barnhart, 125 Fed. Appx. 920, 922, 2005 WL 165446 at
*2 (10th Cir. 2005).

At the evidentiary hearing, the Commissioner will have an
opportunity to present evidence that would permit a reasonable
inference that notice was actually mailed to plaintiff.
Testimony or an affidavit of personal knowledge of such mailing,

or testimony regarding customary mailing practices at the time of the alleged notice and in the office which was responsible for notice will be necessary to permit an inference that the item was properly addressed, had sufficient postage, and was actually mailed.  <u>Davis v. U.S. Postal Serv.</u>, 142 F.3d 1334, 1340 (10th Cir. 1998).  If the Commissioner finds that notice was given, the questions of whether the notice given was adequate to apprise plaintiff of the basis for the Commissioner's determination and actions thereon and whether plaintiff was given an adequate opportunity to defend will require a finding as to the content of the notice given.  Again, testimony or an affidavit of personal knowledge of the content of the notice sent to plaintiff, or testimony regarding customary language used in such notices at the time of the alleged notice and in the office which was responsible for notice will be necessary to permit an inference that plaintiff was given constitutionally adequate notice.

In either case, the Commissioner should allow plaintiff to testify at the evidentiary hearing regarding any notice he received, and regarding what he was told by personnel at the Social Security Administration district office in Ottawa, Kansas. The Commissioner should consider whether plaintiff was given misinformation from the agency or whether he was misled by the agency as defined in 20 C.F.R. §§ 416.351, 416.911 and, if so,

what effect that misinformation or misleading should have on the Commissioner's consideration.

## III. Judicial Review

### A.   Standard of Review

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere

-26-

conclusion.  <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  <u>Id.</u>

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920 (2006); <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1142 (10th Cir. 2004); <u>Ray</u>, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  <u>Id.</u> at 750-51.  If

-27-

plaintiff's impairments do no meet or equal the severity of a listing, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520, 416.920.  This assessment is used at both step four and step five of the process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform his past relevant work, and whether he is able to perform other work in the national economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

### 1.    The Decision on Remand

Plaintiff first claims the ALJ erred at step three in failing to find plaintiff's condition equals Listing 1.04 based upon the testimony of the Commissioner's medical expert, Dr. Leeb, (given at the ALJ hearing on the second application) that plaintiff's condition met Listing 1.04 beginning on the day he was hit by a truck, Mar. 17, 1997.  Second, plaintiff claims the ALJ erred in failing to give controlling weight to the opinion of his treating physician, Dr. Davis.  The Commissioner argues that the time period after Mar. 27, 2001 was adjudicated in

proceedings on the second application and is not subject to
review in this case, and that the ALJ specifically limited the
scope of the decision on remand to address only the stated reason
for remand--"determining whether Plaintiff's ability to
concentrate is limited because of pain." (Comm'r Br. 14-15). He
argues that consideration of Dr. Leeb's testimony was not
relevant to the issue of whether plaintiff's concentration is
limited because of pain. (Comm'r Br. 17-18). Further, he argues
that the ALJ adopted the prior hearing decision dated Dec. 14,
1999; addressed the limited issue raised by the District Court
and properly weighed Dr. Davis's opinion; and substantial
evidence in the record supports the weight assigned. Id. at 15-
17. Both of the errors alleged by plaintiff relate to evaluation
of medical opinions. Because all medical opinions must be
weighed, the court will address both alleged errors together.

Medical opinions may not be ignored and, unless a treating
source opinion is given controlling weight, will be weighed in
accordance with factors contained in the regulations. 20 C.F.R.
§§ 404.1527(d), 416.927(d); Soc. Sec. Ruling (hereinafter SSR)
96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp.
2007). A physician who has treated a patient frequently over an
extended period of time is expected to have greater insight into
the patient's medical condition. Doyal v. Barnhart, 331 F.3d
758, 762 (10th Cir. 2003). But, "the opinion of an examining

-29-

physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of examining sources are generally given more weight than the opinions of non-examining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2007).

Plaintiff cannot prevail on his claim of error in failing to give controlling weight to Dr. Davis's opinion. The ALJ found that Dr. Davis examined plaintiff only a few times; that many of the limitations opined by Dr. Davis are consistent with the RFC

assessed by the ALJ; and that the administrative record, including Dr. Davis's notes, is inconsistent with Dr. Davis's opinion that plaintiff can only sit two hours in a workday and can only stand one hour in a workday. (R. 374). These findings constitute findings that Dr. Davis's opinion is neither well-supported nor consistent with the other substantial evidence in the record. At the very least, the record supports the ALJ's finding that Dr. Davis's opinion is inconsistent with other substantial evidence in the case record. For example, the agency medical consultants opined that plaintiff could sit six hours in a workday and stand and/or walk six hours in a workday. (R. 215). Therefore, the ALJ's decision not to give Dr. Davis's opinion controlling weight is supported by substantial evidence in the record as a whole.

However, the court cannot find that the medical opinions were properly evaluated on remand. If the treating source opinion is not given controlling weight, the inquiry does not end. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing

performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).  Therefore, once it has been determined that no treating source opinion may be accorded controlling weight, all of the medical opinions must be weighed using the regulatory factors. After considering the factors, the ALJ must give reasons in the decision for the weight he gives the opinions.  Id. 350 F.3d at 1301.  "Finally, if the ALJ rejects the treating source opinion completely, he must then give 'specific, legitimate reasons' for doing so."  Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).  Where the ALJ's assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the medical source opinion.  Soc. Sec. Rul. 96-8p, West's Soc. Sec. Reporting Serv. 150 (Supp. 2007).

The ALJ incorporated the earlier decision into his decision on remand. (R. 368-69).  Therefore, the ALJ's earlier evaluation

of the medical opinions still stands in support of his
evaluation.  In its Recommendation and Report in the earlier
proceedings, the court found that the ALJ had properly weighed
the opinions of Dr. Barr.  (R. 407).  As the Commissioner noted
in his brief, the court remanded the case "for the limited
purpose of determining whether plaintiff's ability to concentrate
is limited because of pain."  (Comm'r Br. 15)(quoting(R. 418)).
However, the Commissioner omitted the remainder of the court's
instruction: "and for any further proceedings necessary
thereafter."  (R. 418).

Subsequent to the court's order, the Commissioner
determined, based upon the testimony of Dr. Leeb, that plaintiff
was disabled beginning Mar. 27, 2001.  (R. 492-96).  On remand,
plaintiff pointed to Dr. Leeb's testimony that plaintiff's
condition equaled Listing 1.04 beginning Mar. 17, 1997, presented
a transcript of Dr. Leeb's testimony, and argued, based upon that
testimony and Dr. Davis's opinion, that the ALJ should find
plaintiff disabled.  (R. 999-1001).  As plaintiff noted at the
hearing on remand, Dr. Leeb testified as a medical expert for the
Commissioner at the hearing on the second application.  (R. 987-
91).  He testified that plaintiff's condition equaled listing
1.04 beginning the date he was hit by a truck--Mar. 17, 1997.
(R. 990-91).

Here, the ALJ did not discuss Dr. Leeb's opinion or weigh that opinion in either the decision on remand or the decision on the third application.  Thus, the court is at a loss to determine the weight given that opinion in the ALJ's analysis.  As the court noted in its Report and Recommendation in the prior proceedings, an ALJ may not ignore evidence contrary to the findings he makes.  (R. 399-400)(citing <u>Smith v. Bowen</u>, 687 F. Supp. 902, 904 (S.D.N.Y. 1988)("cannot pick and choose evidence that supports a particular conclusion."); <u>see also</u>, <u>Grogan v. Barnhart</u>, 399 F.3d 1257, 1266 (10th Cir. 2005)(error not to discuss significantly probative evidence ALJ rejects); <u>Victory v. Barnhart</u>, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005)(error to ignore a medical opinion).  Remand is necessary for the Commissioner to weigh <u>all</u> the medical evidence and the medical opinions relating to the period before Mar. 27, 2001, to weigh the medical opinions including the opinion of Dr. Leeb, to determine whether plaintiff was disabled at any time before Mar. 27, 2001, and to determine whether plaintiff's disability onset was before his insured status expired Jun. 30, 1998.

## 2.   The Decision on the Third Application

The decision on the third application must be remanded for the same reasons discussed above.  In the decision on the second application the Commissioner determined that plaintiff was disabled beginning Mar. 27, 2001 based upon Dr. Leeb's opinion

that plaintiff's condition equaled Listing 1.04 beginning Mar. 17, 1997.  Plaintiff brought this evidence to the ALJ's attention, yet the ALJ did not discuss the evidence in any manner.  Therefore, to the extent that the Commissioner determines plaintiff had constitutionally adequate notice of the excess resource determination and an opportunity to defend, remand is necessary for the Commissioner to consider the evidence as discussed above as it relates to the third application filed Dec. 9, 2003.

In his supplemental brief, plaintiff informed the court that plaintiff filed a fourth application on Apr. 21, 2007 and was once again found disabled on Feb. 7, 2008, effective with the filing of his fourth application.  The court is not aware of the basis for that decision.  The court notes several issues that are disturbing in this case and should be considered by the Commissioner on remand.  The Commissioner has found plaintiff disabled for two periods separated by a period during which he found plaintiff not disabled.  There are several treating physicians who have consistently opined that plaintiff is greatly limited by his impairments, and Dr. Davis has opined that plaintiff is unable to sit and stand throughout a workday.  A medical expert for the Commissioner has testified that plaintiff's condition equaled a listing beginning when plaintiff was first injured in an automobile accident in 1997.  The

Commissioner's decision on remand should be sufficiently thorough and clear to overcome the ambiguities created by these issues and by the Social Security Administration's inconsistent opinions, though the court will not presume to direct the result of the Commissioner's consideration on remand.

**IT IS THEREFORE RECOMMENDED** that the court find that it is without jurisdiction to review the Jun. 13, 2003 decision on the second application, and that it has jurisdiction to review the Apr. 20, 2006 decision on remand, the Apr. 20, 2006 decision on the third application, and the excess resource determination made in or about Aug. 2003.

**IT IS FURTHER RECOMMENDED** that pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Apr. 20, 2006 decision on remand, the Apr. 20, 2006 decision on the third application, and the excess resource determination made in or about Aug. 2003 be REVERSED, and JUDGMENT be entered REMANDING the case for further proceedings as discussed herein.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a

waiver of appellate review.  <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 26th day of February 2008, at Wichita, Kansas.


s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**